UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| WOOS LLC dba CONVIRZA, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> MOHAMMAD MUSTAFA AKA MO ASADY, an individual; JAMES WALKER, an individual; CAMERON HOLMES, an individual; FREIGHTON, LLC dba CALL GENERATION NETWORK and MISDIAL.AI, a Florida limited liability company; NUMBER5, LLC dba NUMBERS AI, LLC and NUMBERS, LLC, a Delaware limited liability company, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [111] PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** <br><br> Case No. 2:25-cv-00212-DBB <br><br> District Judge David Barlow |

Before the court is Plaintiff Woos LLC dba Convirza's ("Convirza") Motion to Dismiss[1] Defendant Mo Asady's Counterclaim.[2]

**BACKGROUND**

This case involves a complex business dispute. Plaintiff Convirza is a Nevada limited liability company with its sole place of business in Utah.[3] Convirza describes itself as a coaching company that later moved into call analytics using AI review.[4] Mr. Asady was Convirza's Chief

---

[1] Motion to Dismiss Counterclaim ("MTD"), ECF No. 111, filed Nov. 25, 2025.
[2] Asady Counterclaim ("Counterclaim"), ECF No. 102 at 59–72, filed Nov. 5, 2025.
[3] First Amended Complaint ("Compl.") ¶ 1, ECF No. 41, filed May 12, 2025.
[4] *Id.* ¶¶ 14–15.

1

Technology Officer from 2021 to 2024.[5] Convirza's Amended Complaint alleges that Mr. Asady conspired with other Convirza employees to start a competing company and to funnel Convirza's business to that company.[6]

Mr. Asady denies these allegations.[7] He also asserts several counterclaims against Convirza. Mr. Asady alleges that his employment contract with Convirza gave him "an ownership grant of 2.5% equity" in Convirza.[8] However, he asserts that this equity provision was not honored and that he never received any dividends, distributions, or "incidents of ownership."[9] Mr. Asady also claims that counterclaim defendant J. Wilson made threats to him and sent defamatory communications to customers about him.[10] Convirza has moved to dismiss several of these causes of action.[11] In his Opposition, Mr. Asady consents to the dismissal of two of his causes of action—fraudulent transfer[12] and abuse of process —but argues that his other claims should survive.[13]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its

---

[5] *Id.* ¶¶ 21, 27.
[6] *Id.* ¶¶ 30–33.
[7] Asady Answer ("Answer"), ECF No. 102 at 1–59, filed Nov. 5, 2025.
[8] Counterclaim ¶ 10.
[9] *Id.* ¶¶ 12, 21, 43.
[10] *Id.* ¶ 17
[11] *See* MTD.
[12] Although Convirza requests dismissal of the fraudulent transfer claim in count five and Mr. Asady consents, that count does not allege any claims against Convirza. *See* Counterclaim 68 (alleging fraudulent transfer only against J. Wilson, Trustee, WOOS LLC, JL Unlimited Opportunities, and Affiliated Entities, not Convirza). There is nothing in count five for the court to dismiss against Convirza.
[13] Opposition to Motion to Dismiss ("Opp'n") 1, ECF No. 121, filed Jan. 6, 2026.

face."[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[16] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[17]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[18] "However, notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"

## DISCUSSION

### I.   Minority-Owner Oppression and Breach of Fiduciary Duty (Counts II and III)

Convirza first challenges Mr. Asady's counterclaims for minority owner oppression and breach of fiduciary duty.[19] These counterclaims assert that Convirza owed Mr. Asady, as a minority owner of Convirza, fiduciary duties of loyalty and care[20] and a duty to refrain from

---

[14] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).
[16] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[17] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).
[18] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).
[19] MTD 3–5.
[20] Counterclaim ¶ 49.

oppressive conduct with regard to his ownership interest.[21] Mr. Asady alleges that Convirza violated these duties by denying him his incidents of ownership and governance rights,[22] threatening and defaming him,[23] and by diverting assets and concealing profits.[24]

Convirza argues that these claims are barred by the economic loss rule because they rely on allegations that Mr. Asady did not receive his membership interest in Convirza, which is a contractual matter.[25] Mr. Asady responds that the economic loss rule does not bar his claims because the contract in question only concerns employment and the transfer of ownership, not Convirza's duties toward Mr. Asady as a shareholder.[26]

The economic loss rule states that "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort."[27] However, when "a duty exists independent of any contractual obligations between the parties . . . the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'"[28]

In this case, the subject matter of the claims for minority owner oppression and breach of fiduciary duty generally overlap with the subject matter of the contract. The contract between Mr. Asady and Convirza states that Mr. Asady will receive "2.5% equity vested annually over 4

---

[21] *Id.* ¶ 42.
[22] *Id.* ¶¶ 43, 47, 50.
[23] *Id.* ¶¶ 44, 50.
[24] *Id.* ¶ 51.
[25] MTD 3.
[26] Opp'n 2.
[27] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193, 196 (quoting *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168).
[28] *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235, 240 (quoting *Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256 (Colo. 2000)).

years."[29] The Counterclaim summarily states that "Mr. Asady is a minority owner,"[30] but it also

alleges facts indicating that he never received any indicia of ownership, distributions, or

opportunities to participate as an owner.[31] Thus, his ownership allegations in counts two and

three essentially amount to claims that Convirza did not perform its contractual obligations by

failing to give him an ownership interest.

The Counterclaim's allegations that Convirza breached its duties to Mr. Asady by

diverting assets, concealing profits, making threats, and publishing defamatory statements[32]

likewise overlap with the employment contract as they are currently pled. Mr. Asady asserts that

the duties forming the basis for his claims against Convirza in counts two and three arose

because of his status as a minority owner of Convirza.[33] But any status as a minority owner that

would give rise to such duties seemingly depends on the contract. At least Mr. Asady himself

pleads his claim this way, as he explicitly links his minority-owner oppression claim to the

implied covenant of good faith and fair dealing.[34] Mr. Asady also does not explain how Convirza

itself would owe fiduciary duties to its members (as opposed to the members owing duties to

Convirza and each other). For these reasons, Counts II and III, at least as currently pled, do not

sufficiently state plausible tort claims.

The parties also argue about whether the economic loss rule affects Mr. Asady's claims

against the other counterclaim defendants in counts two and three.[35] This dispute is not relevant

---

[29] Employment Contract, ECF No. 102 at 74–76, filed Nov. 5, 2025.
[30] Counterclaim ¶¶ 43–49.
[31] *Id.* ¶¶ 27, 43.
[32] *Id.* ¶¶ 43–44, 50.
[33] *Id.* ¶¶ 43, 49.
[34] *Id.* ¶ 42.
[35] Opp'n 4; Reply in Support of Motion to Dismiss ("Reply") 3–4, ECF No. 123, filed Jan. 20, 2026.

to the court's analysis here because no counterclaim defendants other than Convirza have moved to dismiss any claims against them.

## II.      Unjust Enrichment

Convirza next challenges Mr. Asady's claim for unjust enrichment. In Utah, a claim for unjust enrichment has three elements, "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[36] Because unjust enrichment is "designed to provide an equitable remedy where one does not exist at law . . . if a legal remedy is available, such as breach of an express contract," unjust enrichment cannot apply.[37]

The Counterclaim alleges that Convirza received benefits from Mr. Asady's employment and that it would be inequitable for Convirza to retain benefits without paying Mr. Asady the value of his work, including the value of the 2.5% interest.[38] Convirza argues that this claim should be dismissed because the parties agree that there is a contract that governs their employment relationship.[39] Mr. Asady concedes that an award for contract damages and unjust enrichment damages would be improper.[40] But he contends that the unjust enrichment claim

---

[36] *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279, 289 (quoting *Parks v. Zions First Nat'l Bank,* 673 P.2d 590, 599 (Utah 1983)).

[37] *AGTC Inc. v. CoBon Energy LLC*, 2019 UT App 124, ¶ 19, 447 P.3d 123, 129 (quoting *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996), *abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, 221 P.3d 234).

[38] Counterclaim ¶¶ 55–56.

[39] MTD 5.

[40] Opp'n 5.

should be permitted to continue in the alternative until the validity of the contract and the interpretation of its terms have been resolved.[41]

The fact that parties to a case have "acknowledged and agreed that a contract existed between them does not necessarily lead to the conclusion that it was an enforceable contract that effectively governed their rights and obligations with respect to the subject matter of the case."[42] Although the parties seem to agree that a relevant contract existed, the full scope of their arguments, defenses, and evidence is not yet before the court. At this stage, the court considers it premature to dismiss Mr. Asady's unjust enrichment claim before deciding the validity and effects of the alleged employment contract.

## III.    Accounting

The Counterclaim next asserts a cause of action for accounting and forensic review.[43] It states only that "[t]he true amounts of profits, distributions, and transfers are uniquely within Defendants' knowledge" and requests that the court "[o]rder a full accounting; production of books and records; issuance of accurate tax forms (including K-1s) consistent with the declaration of ownership or fair-value buyout."[44] Convirza argues that this claim states no basis for relief and only requests a remedy.[45] Mr. Asady responds that his "oppression and breach of fiduciary" claims support the accounting claim and that the Counterclaim also states a common law accounting claim.[46]

---

[41] *Id.*
[42] *AGTC Inc.*, 447 P.3d at 130.
[43] Counterclaim ¶¶ 62–63.
[44] *Id.*
[45] MTD 8.
[46] Opp'n 5–6.

In Utah, an accounting claim is most simply defined as "a legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant."[47] An accounting claim may be legal or equitable depending on the facts alleged.[48] When a plaintiff claims that a defendant "unjustly retained funds to which it was not entitled" and has exclusive control of records and accounts necessary to ascertain the amount of those funds, an equitable accounting claim may be appropriate.[49] As with all equitable remedies, an accounting claim may only be maintained in the "absence of an adequate remedy at law."[50] Absent statutory authority, accounting is "not an independent legal cause of action when it is sought in connection with a tort or contractual claim for damages."[51]

Here, as Convirza argues, the accounting claim provides no basis for relief. It does not explain what relationship it relies upon, what money is owed, or why Mr. Asady may be entitled to that money.[52] It only states that Defendants know about certain "profits, distributions, and transfers" and requests a forensic accounting of all books and records.[53] This is a request for relief unconnected to any cause of action. Mr. Asady's argument that it is based on his oppression and breach of duty claims is unavailing because those claims have been dismissed. The Counterclaim's cause of action for "accounting; books & records; forensic review" does not adequately state a claim.

---

[47] *Failor v. MegaDyne Med. Prods., Inc.*, 2009 UT App 179, ¶ 13, 213 P.3d 899, 905 (quoting *Black's Law Dictionary* 19 (7th ed. 1999)).
[48] *Id.* at 905.
[49] *Id.* at 905–06.
[50] *Id.* at 905 (quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962)).
[51] *King v. XPO Logistics, Inc.*, No. 2:16-CV-434-DN, 2017 WL 213791, at *4 (D. Utah Jan. 18, 2017) (unpublished).
[52] Counterclaim ¶¶ 62–63.
[53] *Id.*

## IV.    Civil Conspiracy

Finally, the parties dispute whether the Counterclaim successfully states a claim for civil conspiracy.[54] The court does not need to address the substance of these arguments because count ten does not allege a civil conspiracy claim against Convirza.[55] The "civil conspiracy" claim is only alleged against J. Wilson, the Trust/Trustee, and Affiliated Entities.[56] Convirza is not listed as a counterclaim defendant to this claim.[57] There is nothing for the court to dismiss against Convirza regardless of the merits of the parties' respective arguments.

## ORDER

Convirza's [111] Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Counts II, III, VI, and VII are DISMISSED without prejudice against Convirza.

Signed April 9, 2026.

BY THE COURT

_____

David Barlow
United States District Judge

---

[54] MTD 12–13; Opp'n 6–7.

[55] Counterclaim 70.

[56] *Id.*

[57] The Counterclaim defines "Affiliated Entities" as "any entity controlled directly or indirectly by, or for the benefit of, J. Wilson and/or the Trust—including but not limited to any special-purpose, pass- through, or holding entities— that has received or controlled assets, receivables, or opportunities derived from Convirza or impacting Asady's equity/distribution rights." Counterclaim ¶ 8. This term is not used interchangeably with Convirza in the Counterclaim, so it does not expand the claims in count ten to include Convirza. *See* Counterclaim, Counts II and III (including claims against both Convirza and Affiliated Entities), Count V (including a claim against Affiliated Entities but not Convirza), Counts VI, VII, VIII, and IX (including claims against Convirza but not Affiliated Entities).